IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ACUSHNET COMPANY, a Delaware )
corporation,                 )
                             )
        Plaintiff,           )  Case No. CV05-764-HU
                             )
    vs.                      )       FINDINGS AND
                             )       RECOMMENDATION
G.I. JOE'S, INC., an Oregon  )
corporation,                 )
                             )
        Defendant.           )
_____)
                             )
G.I. JOE'S, INC., an Oregon  )
corporation,                 )
                             )
        Third-Party Plaintiff, )
                             )
    vs.                      )
                             )
CAM GOLF, INC., an Illinois  )
corporation,                 )
                             )
        Third-Party Defendant. )
_____)

David J. Sweeney
Paul G. Dodds
Brownstein, Rask, Sweeney, Kerr, Grim, DeSylvia & Hay
1200 SW. Main Street
Portland, Oregon 97205
    Attorneys for third-party plaintiff

Thomas W. Brown
Cosgrave Vergeer Kester
805 S.W. Broadway, 8th Floor
Portland, Oregon 97205
    Attorney for third-party defendant

HUBEL, Magistrate Judge:

In this action for trademark infringement, brought by Acushnet Company (Acushnet) against G.I. Joe's, Inc. (G.I. Joe's), G.I. Joe's filed a third party complaint against third-party defendant Cam Golf, Inc. (Cam Golf) for breach of the warranty against infringement. After a settlement conference, Acushnet and G.I. Joe's agreed to settle Acushnet's claims against G.I. Joe's for $25,000. Although Cam Golf was present at the settlement conference, it did not participate in the settlement.

The case which now remains is G.I. Joe's claims against Cam Golf for the $25,000 expended to settle Acushnet's claims and attorney's fees and costs incurred by G.I. Joe's in defending Acushnet's claims.

Two motions are before the court. The first is a motion for summary judgment on its claims, filed by G.I. Joe's (doc. # 46). The second is a motion to determine the sufficiency of answers made by Cam Golf to Requests for Admission filed by G.I. Joe's, and to compel production of documents requested by G.I. Joe's (doc. # 39).

**Factual Background**

In March 2005, G.I. Joe's placed an order with Cam Golf for a total of 396 dozen Titleist Pro V-1 golf balls (the Titleist golf balls). Acushnet is the manufacturer of Titleist golf balls, and although G.I. Joe's had a direct account with Acushnet for some golf items, it did not have a direct account with Acushnet for

FINDINGS AND RECOMMENDATION Page 2

Titleist golf balls. G.I. Joe's instead obtained what appeared to be Titleist golf balls from Cam Golf, a supplier of golfing equipment. G.I. Joe's had been buying golf balls from Cam Golf for several years. G.I. Joe's has presented an affidavit from its buyer, Dave Matthews, stating that the only Titleist golf balls sold by G.I. Joe's during 2005 were those purchased from Cam Golf. Matthews Affidavit, ¶ 7. Defendant does not dispute this fact. Between March 19, 2005, and April 19, 2005, G.I. Joe's sold a total of 109 dozen of the Titleist golf balls to its customers.

On April 19, 2005, one of G.I. Joe's customers complained to the manager of the Eugene, Oregon store that the Titleist golf balls he had purchased were "seconds" or counterfeits because the laminate on the golf balls came off after one round of golf. G.I. Joe's pulled all of its remaining stock of Titleist golf balls from its shelves, about 138 dozen, and contacted Cam Golf's president, Don Bach, about the customer's complaint. Mr. Bach told G.I. Joe's that it could return the golf balls for full credit, which G.I. Joe's did.

Meanwhile, a G.I. Joe's customer had complained to Acushnet that there was something wrong with the golf balls he had purchased from the G.I. Joe's in Kent, Washington. Acushnet determined that the customer had purchased counterfeit golf balls. Acushnet then sent an investigator to purchase golf balls from the G.I. Joe's store in Puyallup, Washington, and determined that these golf balls

FINDINGS AND RECOMMENDATION Page 3

were also counterfeit.

On May 27, 2005, Acushnet commenced this action against G.I. Joe's. G.I. Joe's answered and filed a third-party complaint against Cam Golf, alleging that Cam Golf breached its warranty of non-infringement. Acushnet and G.I. Joe's settled, with G.I. Joe's paying Acushnet $25,000 and incurring $19,350 in attorney's fees.

## Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." State of California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003). The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Id. at 322.

On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir. 2001).

**Discussion**

**1.   The summary judgment motion**

The warranty against infringement, which forms the basis of G.I. Joe's claim against Cam Golf, is found in the Oregon's Uniform Commercial Code (U.C.C.), at Or. Rev. Stat. § 72.3120(3):

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like ...

The official comment to this section states that "[w]hen goods are part of the seller's normal stock and are sold in his normal course of business, it is his duty to see that no claim of infringement of a patent or trademark by a third party will mar the buyer's title."

G.I. Joe's asserts that Cam Golf breached the warranty against infringement by selling counterfeit Titleist golf balls, and that as a merchant regularly dealing in the sale of golf balls, Cam Golf warranted that the Titleist golf balls it sold to G.I. Joe's were "free of the rightful claim of any third person by way of infringement or the like."

As a result, G.I. Joe's contends that it is entitled to the

FINDINGS AND RECOMMENDATION Page 5

statutory damages recoverable for breach of the warranty of non-infringement, which are 1) the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount; and 2) consequential damages, which include injury to person or property proximately resulting from any breach of warranty.

Cam Golf argues that questions of fact exist on whether the Titleist golf balls were in fact infringing, whether the accused golf balls sold by G.I. Joe's came from Cam Golf, and whether the settlement was reasonable. Cam Golf neither admits nor denies that the Titleist golf balls were infringing, and neither admits nor denies that the settlement amount G.I. Joe's paid to Acushnet was reasonable.[1] Cam Golf argues that because G.I. Joe's stopped selling the golf balls as soon as it received a customer complaint, it took "all possible steps to minimize its sale of potentially counterfeit merchandise, and minimized any possible damage that Acushnet, the owner of the Titleist brand, would suffer." Therefore, it argues, the infringement claim asserted against G.I. Joe's by Acushnet could have been settled for less than $25,000.

---

[1] Cam Golf characterizes Acushnet's litigation as "overly aggressive," and claims that G.I. Joe's "capitulated and settled the case, despite the fact that damages recoverable against G.I. Joe's were minimal based on G.I. Joe's role as an innocent infringer." Cam Golf is currently being sued by Acushnet in the Northern District of Illinois, over the allegedly counterfeit Titleist golf balls.

FINDINGS AND RECOMMENDATION Page 6

>    a.   Is there a genuine issue of material fact on whether Cam Golf breached the warranty of non-infringement?

G.I. Joe's has proffered evidence that the Titleist golf balls sold by G.I. Joe's in March 2005 were infringing, and that the only Titleist golf balls G.I. Joe's sold during that period were originally obtained from Cam Golf. Cam Golf neither admits nor denies that the golf balls it sold to G.I. Joe's were infringing, despite claiming that it has investigated the matter. Cam Golf admits that G.I. Joe's ordered 396 dozen Titleist golf balls from Cam Golf on March 1 and March 28, 2005, and that Cam Golf filled those orders. Cam Golf neither admits nor denies that it sold the accused Titleist golf balls to G.I. Joe's.

The U.C.C. provides that the warranty of non-infringement is imposed on a seller who is a merchant regularly dealing in goods of the kind. Cam Golf is such a merchant. G.I. Joe's has produced evidence that Cam Golf breached the warranty of non-infringement, and Cam Golf has not countered that evidence. In the absence of any genuine issue of material fact, G.I. Joe's is entitled to summary judgment on the issue of Cam Golf's breach of the warranty of non-infringement.

I turn now to the issue of the consequential damages to which G.I. Joe's is entitled for that breach.

>    b.   Is G.I. Joe's entitled to claim the amount of the settlement as consequential damages?

FINDINGS AND RECOMMENDATION Page 7

Cam Golf argues that the amount G.I. Joe's paid to Acushnet may not be recovered as consequential damages because the payment was by settlement rather than pursuant to a judgment. Cam Golf cites Kaiser Aluminum & Chemical Sales, Inc. v. PPG Industries, Inc., 42 F.3d 1147 (7th Cir. 1994)(applying substantive law of Texas).

Kaiser Aluminum involves the question of whether, under Texas law, a party that has entered into a settlement can bind a third party to the judgment by means of the "vouching in" procedure authorized by § 2-607 (5) of the U.C.C. The "vouching in" procedure authorizes an intermediate seller that has been sued for breach of warranty to give notice of the lawsuit to the original seller and advise the original seller that it may come in and defend the lawsuit. If the original seller does not do so, in any resulting lawsuit by the intermediate seller against the original seller, the original seller is bound by any determination of fact common to the two litigations.

In Kaiser Aluminum, the court held that under Texas law, the only method by which an intermediate seller could seek reimbursement from an original seller was by using the "vouching in" procedure; the court also held that a party cannot use the "vouching in" procedure when it settles the first case. The court reasoned that because "vouching in" is mandatory under Texas law, a party cannot avoid its requirements by claiming that settlement

amounts were consequential damages. 42 F.3d at 1150.

Cam Golf argues that the same reasoning applies in this case, and that G.I. Joe's was required to use the "vouching in" procedure provided by the U.C.C. and cannot, therefore, assert a claim for the settlement as consequential damages.

I find this argument unpersuasive. First, the Oregon U.C.C. "vouching in" provision, Or. Rev. Stat. § 72.6070(5), is not mandatory. The statute provides:

> (5) Where the buyer is sued for breach of a warranty or other obligation for which the seller is answerable over:
>
> (a) The buyer may give the seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so the seller will be bound in any action against the seller by the buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend the seller is so bound.
>
> (b) If the claim is one for infringement or the like pursuant to ORS 72.3120(3), the original seller may demand in writing that the buyer turn over to the seller control of the litigation including settlement or else be barred from any remedy over and if the seller also agrees to bear all expense and to satisfy any adverse judgment, then unless the buyer after seasonable receipt of the demand does turn over control the buyer is so barred.
>
> (6) The provisions of subsection[s] ... (5) appl[ies] to any obligation of a buyer to hold the seller harmless against infringement or the like pursuant to ORS 72.3120(3).

///

FINDINGS AND RECOMMENDATION Page 9

Unlike the situation in Kaiser, I find no indication that the "vouching in" procedure under Or. Rev. Stat. § 72.6070(5) is mandatory, or that it precludes the remedies provided under Or. Rev. Stat. §§ 72.7140(3) and 72.7150(2)(b). The use of the word "may" in § 72.6070(5) is permissive; the parties have not directed the court to an Oregon case holding otherwise, and the court has not discovered such a case.

I recommend that G.I. Joe's be given summary judgment on this issue.

> b. Is there a genuine issue of material fact on whether the settlement amount was reasonable?

G.I. Joe's has the burden of proving that the settlement amount was reasonable. *See* Comment 4 to U.C.C. § 2-714 ("The burden of proving the extent of loss incurred by way of consequential damage is on the buyer ... Loss may be determined in any manner which is reasonable under the circumstances.") Cam Golf argues that G.I. Joe's has not met this burden.

The Lanham Act, under which Acushnet sued G.I. Joe's, allows a plaintiff to recover the defendant's profits, any damages sustained by the plaintiff, and the costs of the action. 17 U.S.C. § 1117(a); Lindy Pen Co. Inc. v. Bic Pen Corporation, 982 F.2d 1400, 1405-97 (9th Cir. 1992). Alternatively, the plaintiff may elect to recover statutory damages, an amount which is not less than $500 or more than $100,000 per counterfeit mark per type of

FINDINGS AND RECOMMENDATION Page 10

goods or services sold. The statute leaves it to the court's discretion to award whatever "the court considers just." There is no evidence before the court on the question of whether Acushnet sustained damages as a result of the infringing Titleist golf balls. The complaint filed by Acushnet requests statutory damages in the amount of $1 million per infringed mark, as well as compensatory and punitive damages.

G.I. Joe's argues that statutory damages were in the range of $2,500 to $500,000, so that settling the case for $25,000, which was 5% of its maximum possible exposure, was reasonable, especially when considering the costs of defending the case through trial. G.I. Joe's points out that when its defense costs of $19,350, incurred to the time of settlement, are factored in, the difference between the settlement amount and the lowest possible statutory damages was only $22,500, significantly less than the cost of litigating the case to trial. G.I. Joe's has submitted an affidavit from Ron Menconi, Vice President of Merchandise and Marketing for G.I. Joe's, which states that he attended the settlement conference on behalf of G.I. Joe's and that he determined it was reasonable to settle Acushnet's claims against G.I. Joe's "in light of the facts of the case, the inherent risks of litigation, and the costs of defending the lawsuit." Affidavit of Ron Menconi ¶ 2.

Cam Golf argues that as an innocent infringer which, once on notice that the Titleist golf balls were suspect, had removed from

its shelves all of its remaining stock of Titleist golf balls,[2] G.I. Joe's exposure to Acushnet was minimal, probably in the range of about $2,500 (the minimum statutory damages multiplied by five, the number of trademarks which Acushnet alleged had been infringed). According to Matthews and to the Affidavit of Diana Norton, the customer complaint was made on April 19, 2005. Matthews Affidavit ¶ 5; Norton Affidavit ¶ 2. Acushnet filed its complaint against G.I. Joe's in May 2005.

A genuine issue of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." State of California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, when he is ruling on a motion for summary judgment. Id. at 1166.

I conclude that a genuine issue of material fact exists on whether the settlement was reasonable, because a reasonable jury could find for either side on this issue. I recommend that G.I. Joe's motion for summary judgment on this issue be denied.

        c.    Attorney's Fees Incurred by G.I. Joe's in Defending against Claims Brought by Acushnet

Cam Golf contends that G.I. Joe's attorney's fees are not recoverable under the U.C.C. for breach of warranty against

---

[2] See Affidavit of Dave Matthews, the buyer for G.I. Joe's, ¶ 5.

FINDINGS AND RECOMMENDATION Page 12

infringement, arguing that under Or. Rev. Stat. § 72.7150,[3] attorneys' fees are not recoverable as consequential damages. *See* Hardwick v. Dravo Equip. Co., 279 Or. 619, 628 (1977).

G.I. Joe's contends that Cam Golf has confused the issue of recoverability of attorney's fees incurred in prosecuting a lawsuit against the seller of goods with attorney's fees incurred in defending a claim brought against the buyer by a third party.

In Hardwick, plaintiff was the purchaser of equipment from the defendant. Plaintiff sued defendant for breach of contract because the equipment was allegedly defective. Plaintiff asserted that he was entitled to recover his attorney's fees as part of his consequential damages. The court rejected the argument, holding that the general rule under Oregon law is that a party may not recover attorney's fees unless they are provided for by contract or statute, and that the U.C.C. did not change that result.

G.I. Joe's argues Oregon courts have "repeatedly recognized" that attorney's fees incurred in defending claims brought by third parties are recoverable as consequential damages in subsequent litigation. So, for example, in Raymond v. Feldmann, 124 Or. App. 543, 546 (1993), the court held:

---

[3] Or. Rev. Stat. § 72.7150 provides, in relevant part:
(2) Consequential damages resulting from the seller's breach include:
\* \* \*
(b) Injury to person or property proximately resulting from any breach of warranty.

FINDINGS AND RECOMMENDATION Page 13

> The general rule is that attorney fees are not recoverable in a breach of contract action unless authorized by statute or by the agreement. However, an exception to the general rule is when a party's breach of contract involves the non-breaching party in litigation with a *third party*. In such a case, the nonbreaching party may be entitled to recover its litigation costs resulting from the separate action.

(Emphasis in original). *See also* Huffstutter v. Lind, 250 Or. 295, 301 (1968)("attorney fees are generally allowable as damages in an action against a defendant where the defendant's tortious or wrongful conduct involved the plaintiff in prior litigation with a third party.")

G.I. Joe's argues that to recover attorney's fees for litigation against a third party as consequential damages, the fees need not even be incurred in a completely different action. G.I. Joe's cites Hoage v. Westlund, 43 Or. App. 435 (1979). In that case, Hoage sold a building to Westlund, and under the terms of the sales contract the taxes for the current year were to be prorated as of the date of the sales contract. The sales contract contained an attorney's fees provision. The parties had instructed the title company to make the proration. The contract with the title company did not contain an attorney's fees provision. The title company failed to prorate the taxes, and Hoage sued Westlund and the title company for damages. In addition to damages, Hoage sought to recover attorney's fees from Westlund under the language of the sales contract.

///

FINDINGS AND RECOMMENDATION Page 14

Westlund cross claimed against the title company, seeking to recover reimbursement for Hoage's attorney's fees, as well as his own attorney's fees incurred in defending against Hoage's claim. The court held, based on <u>Huffstutter</u> and <u>Osborne v. Hay</u>, 284 Or. 133 (1978) that Westlund was entitled to recover both types of attorney's fees from the title company, despite the absence of a fee provision in the contract with the title company. The court rejected the argument that Westlund should not be able to recover his fees because they were not incurred in separate litigation:

> The Title Company argues that Westlund's cross-complaint is not seeking damages resulting from "prior litigation" or an "earlier action" as the litigation expenses were the result of the same case.
>> In the usual case, the attorney's fees will have been incurred in connection with a prior action; but there is no reason why recovery of such fees should be denied simply because the two causes *** are tried in the same court at the same time. <u>Prentice v. North American Title Guaranty Corp.</u>, 30 Cal. Rptr. 821, 381 P.2d 645 (1963).

<u>Hoage</u>, 43 Or. App. at 441.

I conclude, on the basis of this authority, that G.I. Joe's can recover, as consequential damages for Cam Golf's breach, its attorney's fees incurred in defending the action brought by Acushnet.

### 2. Discovery motions

In view of the rulings on the motion for summary judgment, the discovery motions filed by G.I. Joe's are denied as moot. G.I. Joe's request for attorney's fees and costs incurred in bringing

FINDINGS AND RECOMMENDATION Page 15

the discovery motions is denied.

## Conclusion

I recommend that G.I. Joe's motion for summary judgment (doc. # 46) be GRANTED in part and DENIED in part. I recommend that G.I. Joe's be given summary judgment on the issues of whether Cam Golf breached the warranty of non-infringement; whether G.I. Joe's is entitled to claim the settlement amount as consequential damages; and on whether G.I. Joe's is entitled to claim the attorney's fees expended on Acushnet's claim as consequential damages. I recommend that G.I. Joe's motion for summary judgment on the reasonableness of the settlement amount be denied.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due September 5, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due September 19, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 18th day of August, 2006.

Dennis James Hubel
United States Magistrate Judge